Antonio VILLALOBOS, Appellant,

v.

The STATE of Texas, Appellee.

No. 08-98-00300-CR.

Court of Appeals of Texas,
El Paso.

July 29, 1999.

Glen Sutherland El Paso, for Appellant.

Jaime E. Esparza, District Attorney, Richard Dulany, Jr., Assistant District Attorney, El Paso, for State.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## *OPINION*

SUSAN LARSEN, Justice.

Antonio Villalobos pleaded guilty to possession of heroin, subject to his appeal of the trial court's denial of his suppression motion. In four closely related issues, he challenges that ruling. We find there was no probable cause for the warrantless arrest and search here. We therefore reverse and remand.

### *FACTS*

On April 16, 1998, El Paso police officers Benjamin Jackson and Albert Madrid were working an area of downtown El Paso which contains a swap meet, a known drug trafficking spot. Jackson and Madrid were working undercover, and around 3:30 p.m., they watched defendant Villalobos "cruising the area" for twenty to thirty minutes. Eventually, Villalobos parked his car in a metered parking space and left quickly without placing coins in the meter. The officers observed Villalobos enter the swap meet, then talk with a person unknown to them by the swap meet bath-

rooms for less than a minute. The officers did not see any type of transaction between the two men. Villalobos then returned quickly to his car, looked around, and got in.

At that point, the officers blocked Villalobos into the parking space with their unmarked pickup truck. They saw him make a gesture as if he were dropping something to the floorboard behind his seat. Jackson, who had jumped out of the pickup while it was still moving, ordered Villalobos out of his car, and had him place his hands on the hood of the vehicle. Officer Madrid then patted him down. Jackson looked in the vehicle and saw a small pink balloon in plain view on the front seat. To Jackson's knowledge, balloons are frequently used to package drugs. The contents of the balloon field tested positive for heroin.

### STANDARD OF REVIEW

■ The trial court has broad discretion in determining the admissibility of evidence, and we should not reverse absent a clear abuse of discretion.[1] On a motion to suppress evidence, the trial judge is the sole and exclusive trier of fact and judge of credibility of witnesses, including the weight to be given their testimony.[2] We do not engage in our own factual review but merely decide whether or not the trial judge's findings of fact are supported by the record. In a case such as this, however, where the facts relied upon by the State are uncontroverted, their sufficiency is a question of law for the court.[3] If the trial court's findings are supported by the record, we are not at liberty to disturb them.[4] Moreover, if the trial judge's decision is correct on any theory of law applicable to the case, it will be sustained.[5] This principle holds true even though the trial judge gives the wrong reason for its decision.[6]

### PROBABLE CAUSE FOR WARRANTLESS ARREST

■ The trial court here stated that "the totality of the circumstances indicate to me a plain-view seizure." We cannot sustain this theory on appeal, however, as it is well established that any evidence derived from an illegal arrest will "absorb the taint of that illegality" and therefore is properly subject to suppression.[7] We therefore must look to see if any other theory of law will support the trial court's decision.

■ Apparently recognizing the flaws in the plain view theory, the State argues this was a valid search incident to an arrest for an offense committed in the officer's presence: a parking meter violation. Initially, we agree this was a custodial arrest, rather than an investigatory stop. A person is arrested when he has been actually placed under restraint or taken into custody by

1. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim.App.1991), *cert. denied*, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993).

2. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.App.1990); *Cannon v. State*, 691 S.W.2d 664, 673 (Tex.Crim.App.1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Laca v. State*, 893 S.W.2d 171, 177 (Tex.App.—El Paso 1995, pet. ref'd); *Lee v. State*, 893 S.W.2d 80, 84 (Tex.App.—El Paso 1994, no pet.); *Chavarria v. State*, 876 S.W.2d 388, 391 (Tex.App.—El Paso 1994, no pet.).

3. *Rose v. State*, 470 S.W.2d 198, 200 (Tex. Crim.App.1971); *Fields v. State*, 932 S.W.2d 97, 105 (Tex.App.—Tyler 1996, pet. ref'd).

4. *Romero*, 800 S.W.2d at 543; *Laca*, 893 S.W.2d at 177; *Lee*, 893 S.W.2d at 84.

5. *Romero*, 800 S.W.2d at 543; *Calloway v. State*, 743 S.W.2d 645, 651–52 (Tex.Crim.App. 1988).

6. *Salas v. State*, 629 S.W.2d 796, 799 (Tex. App.—Houston [14th Dist.] 1981, no pet.).

7. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Hill v. State*, 692 S.W.2d 716, 722 (Tex.Crim.App. 1985).

an officer.[8] Here, Villalobos was blocked in by the unmarked police car, ordered from his vehicle, and subjected to a pat-down search without any questioning at all. These actions are more consistent with an arrest than with an investigatory detention. Thus, we will examine the trial court's decision based upon whether there was probable cause to arrest Villalobos for an offense he committed in the officers' presence.

■ We reject this argument insofar as it applies to Villalobos' failure to feed the parking meter for two reasons: (1) the evidence does not support probable cause to believe that Villalobos had violated the parking meter ordinance; and (2) violation of the ordinance in question is not a criminal offense. Our reasoning follows.

The El Paso City Code provides:

A. No person shall park a vehicle in any parking space upon a street alongside of and next to which a parking meter has been installed during the restricted and regulated time applicable to the parking meter zone in which such meter is located unless a coin or coins of United States currency of the appropriate denominations as provided in this division shall have been deposited therein, *or shall have been previously deposited therein for an unexpired interval of time,* and such meter has been placed in operation.        .

B. No person shall permit a vehicle within his control to be parked in any such parking meter space during the restricted and regulated time applicable to the parking meter zone in which such meter is located when the parking meter for such space indicates by signal that the lawful parking time in such space has expired. This provision shall not apply to the act of parking or the necessary time which is required to deposit immediately thereafter a coin or coins in such meter.[9]

The testimony before the trial court indicated only that Villalobos failed to feed the meter when he left his car. Nowhere, however, did the officer state that he observed the meter was expired. It is just as likely that Villalobos had found a parking space with time remaining from its previous occupant. Even assuming that parking meter violations are crimes, therefore, we do not find the evidence supports probable cause that a violation had occurred.

■ More importantly, we think it is clear that parking meter violations are civil in nature. The most blatant scofflaw's refusal to pay a meter is subjected to only a civil fine, impoundment of the vehicle, "booting," denial of parking permits, or revocation of the offending car's registration.[10] Even more persuasively, in creating a parking violations bureau for review of parking violations, the El Paso Municipal Code states "the administrative adjudication of violations under this chapter is civil in nature."[11] Hearings on parking violations are not criminal trials: there is no requirement that the ticketing officer appear, thus no confrontation of witnesses guarantee; no charging instrument is required; and the hearing officer's decision is based upon a preponderance of the evidence.[12] Thus, we conclude that even if there were probable cause to believe Villalobos violated the municipal code by failing to pay for parking at a metered space, nonetheless this was an act that could only result in civil liability, not criminal culpability. For these reasons, we conclude Villalobos' warrantless arrest, and the sub-

---

8. TEX. CODE CRIM. PROC. ANN. art. 15.22 (Vernon 1977).

9. EL PASO, TEX., MUNICIPAL CODE ch. 12.56.040 (1991) (emphasis added).

10. EL PASO, TEX., MUNICIPAL CODE ch. 12.85.070 (1992).

11. EL PASO, TEX., MUNICIPAL CODE ch. 12.85.010 (1992).

12. EL PASO, TEX., MUNICIPAL CODE ch. 12.85.050 (1992).

sequent discovery of contraband, cannot be sustained on this theory.

## PROBABLE CAUSE TO ARREST FOR POSSESSION OF A CONTROLLED SUBSTANCE

■ Finally, we review the record to determine whether it supports a finding of probable cause to arrest for possession of the heroin. There is no testimony to support such a conclusion. Both officers testified that they did not see any transaction, for drugs or otherwise, take place. They did not know the man Villalobos met with, thus we cannot infer probable cause from the stranger's reputation. No reasonable person could have believed that he or she had probable cause to arrest Villalobos for possession of a controlled substance. Because no reasonable person could conclude that an offense had occurred, the officers did not have probable cause to arrest Villalobos on this ground either. The evidence seized as a result of an unlawful arrest was illegally obtained and should have been suppressed. We sustain appellant's issues on appeal.

### HARM ANALYSIS

■ Having found error, we must apply the Texas Rules of Appellate Procedure to determine whether the error was harmful, and thus reversible.[13] This requires us to first determine whether the error is constitutional, as the nature of the error dictates the standard under which we evaluate it.[14] Constitutional error requires reversal unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Any other error, defect, irregularity, or variance not affecting substantial rights must be disregarded.[15] Essentially, where constitutional error is shown, the burden is on the State to come forward with reasons why the error is harmless.[16] For other error, the burden is upon the defendant to show actual harm.[17]

Although the facts here may involve statutory guarantees under Texas law,[18] the error is constitutional because it implicates the right to be free of unreasonable searches and seizures under the U.S. and Texas Constitutions.[19] Thus, we will reverse unless the record establishes beyond a reasonable doubt that admission of the contraband into evidence did not contribute to Villalobos' conviction.

Here, without the heroin found as a result of the illegal arrest, the evidence of appellant's guilt is non-existent.[20] Remaining is evidence that the appellant cruised around a swap meet, parked without paying a meter, met someone, and quickly walked away. We cannot find beyond a reasonable doubt that the trial court's error did not have a substantial effect on the appellant's decision to plead guilty, and appellant was harmed by the trial court's decision.

■ Finally, we must determine whether Villalobos waived his issue on appeal by pleading guilty to the offense. We

**13.** TEX.R.APP. P. 44.2; *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997) ("[e]xcept for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis.")

**14.** TEX.R.APP. P. 44.2; *Easley v. State*, 986 S.W.2d 264, 267 (Tex.App.—San Antonio 1998, no pet.).

**15.** *Id.*

**16.** *Merritt v. State*, 982 S.W.2d 634, 636 (Tex. App.—Houston [1st Dist.] 1998, no pet.).

**17.** *Id.* at 637.

**18.** *See* TEX.CODE CRIM. PROC. ANN. art. 14.01, 14.03 (Vernon 1977 & Supp.1999) (listing circumstances under which an officer may arrest without warrant).

**19.** U.S. CONST. amend. IV, XIV; TEX. CONST. art. I, § 9.

**20.** *Daugherty v. State*, 968 S.W.2d 487, 489 (Tex.App.—Fort Worth 1998, no pet.).

find he has not. In *Leday v. State*,[21] the Court of Criminal Appeals held that the *DeGarmo* doctrine will not necessarily work a waiver of error in the admission of illegally-obtained evidence where a defendant has admitted guilt during the punishment stage of trial.[22] That case also recognizes that appellate points are generally waived only by a guilty plea that involves a knowing waiver of appeal.[23] Where a defendant pleads guilty but reserves his right to appeal by raising the issue by written notice ruled on before trial,[24] we believe the properly preserved issue must be reviewed on its merits, and the plea itself will not render any error harmless. Such was the situation here.

## CONCLUSION

We sustain defendant's issues on appeal. The conviction is reversed and the case is remanded to the trial court for new trial in accordance with this opinion.

---

**21.** 983 S.W.2d 713, 723 (Tex.Crim.App.1998).

**22.** *Id.* at 725–26.

